Judge Marshall
delivered the Opinion of the Court.
Clark filed his bill in Chancery to enjoin a portion of several judgments obtained against him by Bell, on the ground of various payments and items of set-off claimed as credits on the judgments; and also, on the ground that Bell’s title to the land, the sale of which formed the consideration of his demand against the complainant, was defective&emdash;that it was interfered with by superior-adverse claims, and that there was a deficiency in the quantity. Bell is called on to exhibit his title, and in case he shews himself able to convey the whole of the land sold, a conveyance is prayed for, but if not, the Complainant asks that the contract bo rescinded.
Bell, in his answer, which is made a cross bill, sets forth his various demands, admits some of the credits claimed, and contests others, and, alleging that the land? which was supposed by the parties to contain eleven hundred acres, was sold by the acre, at five dollars per acre, avers that there is a surplus of at least thirty acres, beyond that quantity; claims payment for it, at the rate of five dollars per acre, with interest, and prays that the land may be sold for payment of the balance due, including compensation for the surplus. He also avers, that he has a good title, to which he refers as exhibited in another suit between the same parties, and promises to exhibit it in this case, but fails, to do so. He denies that *16 there is any interference from which danger is to be ap.prehended, and offers to make a proper conveyance of. the land, with his wife’s relinquishment of dower, upon payment of the purchase money.
On the final hearing, the Court adjusted the several credits, perpetuating the injunction as to part of the sums enjoined, and dissolving it with damages as to the residue. For these damages and for the balance of the original purchase money, and for the sum of one hundred and twenty dollars, the price of the surplus land, with interest thereon from the day when the original payments should have been complete, according to the contract, the land, or so much thereof as might be necessary, was decreed to be sold, and a commissioner appointed for the purpose, by whom five hundred acres were sold. Exceptions taken by the complainant to the sale and report, were overruled, and the whole record is brought up to this Court, by appeal on the part of the complainant.
The decree is erroneous in several points which have been objected to by the assignment of errors,
1. In not stating explicitly the balance due from the complainant, but leaving it to bo ascertained by the commissioner, from several papers referred to. Field vs. Craddock, 4 J. J. Mar. 604.
2. In not giving day for the payment of the sums for which the land was decreed to be sold.
3. In making no provision for the conveyance to the complainant, of so much of the land as should remain after satisfying the decree.
4. In decreeing compensation for the surplus quantity above eleven hundred acres.
Upon thp last only of these points some additional remarks seem to be necessary.
The memorial of the contract of sale recites that, in consideration of five thousand five hundred dollars, to be paid by Clark, in four equal, annual install ments, Bell binds himself to convey by general warranty, four tracts of land, each of which is stated to have been patented to himself, and each is described by reference tp the number of acres, the number of the cevr. *17 lificate in which the title originated, and the persons through whose assignments it came into Bell’s hands. The fourth tract is described as containing ‘one hundred and seventy-two acres, but of this tract only so much was sold as was situated on the west side of the main fork of Drake’s creek, and how much that is, the contract does not state. It is also, to be remarked, that although each of the four tract's is mentioned as containing a certain number of acres, it is very apparent from the whole Case, that the quantity was merely taken from the patent, and was inserted, not to designate vyith precision the number of acres in each tract, but only as matter of description or identification of the land. It appears too, that the four tract's so adjoin each other as to present one connected external boundary, and in fact to constitute one tract of land, and that the quality of the different parts is so varied that a portion of it is proved to be worth not more than a dollar per acre, while other portions vary from that to six or eight dollars per acre. The aggfegate quantity of the four tracts, as stated in the written contract, is eleven hundred and fortyriwo exoneres, of which the whole is embraced in the sale, cept an indéfinite portion of the fourth tract. It is ap* parent from these statements, that this was a sale in gross. The written contract does not even state conjecturally the whole quantity of the land intended to be bought and sold, and therefore not only furnishes no means of ascertaining, from its terms, any agreed price per acre, but actually negatives the idea that the land was sold, -or intended to be sold, fey the acre-, or as containing' any stipulated number of acres. The parties, it is true, have each for his own purpose stated, that the land sold was supposed to contain eleven hundfed acres, and was sold at five dollars per acre, the one claiming compensation at -that rate for a supposed deficiency, and the other for an alleged surplus. But the complainant Clark sets forth the written contract itself, and however the allegations or admissions in the pleading may shew, that the parties, in their negotiation, may have made a conjectural estimate of the quantity, and may have fixed upon the whole price with some reference to thf *18 conjectured quantity—the contract, by omitting to ñameany quantity, or to provide for its future ascertainment as a criterion for the price, or to give any intimation, that the price had been or was to be adjusted by any fixed proportion to the quantity, proves conclusively, that neither the precise value of the. land per acre, nor the precise number of aeres constituted a material element of the negotiation, or had any decided influence in fixing the terms of the sale.
The parties may have conjectured that there were about eleven hundred acres, and may therefore have considered the price as about five dollars per acre. But as the land never had been measured, it is impossible that they could have relied upon their conjecture as being-precisely accurate, and their contract was not based upon any such reliance. If it had been, they would have made some reference to the quantity in reducing-the contact to writing. But having fixed the whole-price upon a mere conjecture as to quantity, which they did not expect to be precisely accurate, it is perfectly evident that both parties were willing to hazard something as to quantity; and in such a case, unless the actual variation from the conjectural estimate should turn out to be more than- the parties might be supposed to contemplate as “within the range of ordinary contingency,” neither would be entitled to relief on account of excess or deficiency. Harrison vs. Talbot, 2. Dana, 258.
The only difficulty in such cases, consists in establishing a criterion by which to determine what degree of variation between the conjectured and the real quantity should be considered as coming within the probable contemplation of the parties; and perhaps no criterion can be fixed exclusively in reference to the variation-in mere quantity .or number of acres. , But taking into view the quality of the land, in the present case, the manifest indifference of the parties as to the preciso quantity, and the large size of the tract intended to bo sold, we are of opinion that a variation of forty or fifty acres, above or below the supposed quantity of eleven hundred acres, would not be sufficient to justify the Chancellor in decreeing compensation.
*19 The sum of one hundred and twenty dollars decreed .for the surplus land, indicates an ascertained excess of -only twenty-four acres. But of two surveys made in ■the case, one shews an excess of about forty-four, and •the other -an excess of about thirty-six acres.
It is probable that the quantity for which the decree allows compensation as surplus land, was obtained by deducting from the largest apparent excess about twenty acres, which appear to be covered by one or more -adverse claims. But according to the views which we ■have taken, there should have been no compensation for the excess, even if it amounted to forty-four acres, and it was, of course, erroneous to decree it for any smaller f ■excess. ‘
In relation to the interference which we suppose to have been substituted from the actual excess, in order to find the quantity of surplus for which compensation was decreed, it is proper to observe, that there is no proof that the interference is either in adverse posses■sion, or that it is covered by a title superior in law or •equity to that of Bell; and further, if it had been actually taken by a superior adverse claim, leaving still a surplus beyond what the parties supposed to have been -bought and sold, and if on that account it were proper to deduct its value from the sum decreed against Clark, it would have been also proper to shew, on the face of the decree, the ground on which the deduction had been made, and to release Beil from his obligation to convey, •or to be further answerable for the interference. As Ihe case stands, it does not appear that any deduction. ■should be made on this account.
It is assigned for error, that the Circuit Court erred in not rescinding .the contract; and it has been frequently ■decided that the failure of the vendor to exhibit his title when called on by the vendee to do so, is a sufficient - - . . xxt i ■• , • , , . „ groundforrescission. We thinki-tprobable,however,from the recitals in the contract of sale, and from the allegations 7 o of Bell’s cross bill, which are unanswered, that Bell is *20 patentee of the land sold, and that the exhibition of his title papers in this suit may have been deemed urn necessary in consequence of that fact, and especially when no adverse interfering title was exhibited on the other side. Entertaining this opinion, we should, if the decree were reversed solely on account of the failure of Bell in this respect, feel bound to give him an opportu? nity of exhibiting his title on the return of the cause to the Circuit Court* and should, no.t peremptorily direct a decree to be entered rescinding the contract. But we do not think his title is so clearly admitted as to author-* fee the decree for a sale of the land, which is in fact, a specific execution of the contract* until the regular evi? dences of it aré exhibited.. It will be proper, therefore, to allow him an opportunity of exhibiting it, and upon his failure to do so, the contract should be rescinded.
For the errors which have been, noticed, the decree directing the sale,, must be reversed, for further proceed-, ings not inconsistent with this opinion. But this reversal will not, according to the repeated decisions of this Court, aifect the sale made under the decree; and it re-», mains to examine the specific objections made to that proceeding*.
The only ei'ror assigned upon this branch of the case* is that the Court erred in overruling the exceptions to the commissioner’s report and the sale made by him. The first of these exceptions is, “that it does not appear that the commissioner advertised and sold the land accord? ing to the decree.?’ Wo think this exception should have been sustained. By the decree the commissioner is directed, after advertising, as is required by law in cases of sales under execution, to sell sp. much of the land as is sufficient &c. The report docs not state that the salp had been advertised at all, nor does i,t appear, that any proof of the fact of advertisement was introduced op the hcaridg of the exception. Whether the sale be tested by the directions of the decree, or by the principles of propriety an.d justice, some previous advertisement was essential to, its validity. And as the ground of every act and determination of the Chancellor should appear on the record, the fact of advertisement, essem. *21 tial to the confirmation of the sale, should have been either stated in the report, or proved aliunde. As the fact was neither stated in the report nor proved aliunde, on the trial of the exception, it must be taken that there was no advertisement. The sale, of course, could not have been properly confirmed, and the report should have been set aside upon the exception, because new proceedings were necessary in conformity with the decree. The opinion of the Court overruling the exceptions to the report and sale, is therefore reversed, and this branch of the case is remanded, with directions to get aside the report and sale upon the exceptions taken thereto. Of course, there can be no further proceedings by sale or otherwise under the decree which has been reversed.