# DECISIONS

# ·COURT OF APPEALS

## OF KENTUCKY.

## M. Clark *et al. versus* James Bell *et al.* CHANCERY. and Handley *vs* James Bell *et al.*

WRITS OF ERROR TO THE BARREN CIRCUIT.     *Case 1.*

*Equity and equitable jurisdiction. Accounts. Vendor and vendee.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.     *September* 10.

MICAJAH CLARK having enjoined several judgments ob-    The case stated.
tained against him for portions claimed as remaining due
of the consideration of a tract of land of about 1100
acres, which he had bought from *James Bell*, in the year
1814, *Bell*, in an answer which he made a cross bill, de-
nied the equity asserted by Clark, and prayed for a decree
for enforcing his equitable lien on the land.    The Circuit
Court having decreed in *Clark's* favor a partial credit,
subjected his equitable title to sale, for the ascertained
residue of *Bell's* judgments, and approved a report made
of a sale of a part of the land under that decree.    *Clark*
appealed to this court and obtained a reversal of that de-
cree and a quashal of that sale: See 4 *Dana*, 15.

After the sale and before the reversal of the decree,
*M. Clark* and *Bullock*, the latter of whom had bought
under the decree, and had given a sale bond with *M. B.*

Vol. II.                                1 .

CLARK *et al.*
*vs.*
BELL *et al.*
AND
HANDLEY
*vs*
BELL *et al.*

*Clark* and *Henderson White* as his sureties, sold and transferred all their equitable interest in the entire tract of about 1100, to the said *M. B. Clark* and *H. White,* who agreed to pay whatever remained due for the land, and who, shortly afterwards, filed an original bill against Bell and others for enjoining the said sale bond, and for adjusting the title to the land.

After the mandate of this court had been entered in the court below, the two cases having in effect become one and the same, were consolidated and progressed, as one suit, to another final decree, whereby the claims to credits, new and old, were adjusted and the land was again directed to be sold for the unpaid balance of the price decreed to be due to *Bell.*

To reverse this decree *M. Clark, M. B. Clark* and *H. White* appealed, and also sued out a writ of error; and one *Handley,* an adversary claimant of a small fraction of the land, who was made a defendant and filed an answer in the nature of a cross bill against Bell, also prosecutes a writ of error for reversing a decree dismissing his said cross bill.

A bill alleging that complainant's title is superior, both in *law* and *equity*, without describing the nature of that claim or exhibiting any document of title, should not be entertained by the Chancellor.

The dismission of Handley's cross bill was obviously right; because, alleging, as he does therein, that his title is superior to that of *Bell,* both in law and in equity, and without even describing the nature of his claim or referring to any document of title, he certainly failed to show a case of which, a Court of Equity should take cognizance.

But the main decree against the other parties presents more difficulty. The errors assigned are: 1st, allegations, in various general and indefinite forms, that the amount decreed to Bell exceeds that to which he is equitably entitled; 2d, that the Court erred in not rescinding the contract of sale by *Bell* to *M. Clark,* and 3d, that it erred in decreeing a sale of the land.

In revising this last decree, we will consider the objections to it in this general order of classification.

In a case involving long and complicated matters of account, this Court will not, upon a general

1. A careful, but rather general examination of the multifarious items of account between the parties as litigated, in voluminous and very imperfect transcripts of records before us, has not enabled us to detect any essential

error in this branch of the case, to the prejudice of the complaining party. And, in such a case, so long pending and often scrutinized, and in which the vigilant counsel who assigned the errors have not ventured to suggest any one specific objection to the amount decreed, or to call our attention to any one fact tending to show a ground for complaint, we do not feel it to be our duty, without any such tangible clue, to attempt a more elaborate or minute exploration of a labyrinth which we have, in the ordinary judicial way, more than once faithfully but fruitlessly surveyed.

We cannot, therefore, reverse the decree on the first general objection to it.

2. The only pretence for now complaining that the Circuit Judge did not decree a rescission of the contract is the fact that *Bell* has not, formally, exhibited his documents of title in this case, although they seem to be filed in another case between *M. Clark* and himself. But *M. Clark* did not, in his original bill, intimate any doubt as to Bell's general title, or require the exhibition of his documents. In that bill he only made three specific objections to *Bell's* title to very inconsiderable portions of the entire tract. Nor has either *M. B. Clark* or *White* any where required an exhibition of the documents of title; or suggested any other objection than such as had been made by *M. Clark:* hence it might be inferred that all the parties having seen the documents in the other suit, and *M. Clark* having enjoyed the undisturbed possession of nearly all the land ever since the year 1814, they all considered the title good except so far as they made specific and unavailing objections to it. Nevertheless as *M. Clark* had, in one of his amended bills, called for an exhibition of the documents of title *in this case also*, this Court said, in its former opinion, that although under the circumstances, it could not then deem a rescission of the contract a proper consequence of *Bell's* omission to translate his documents of title formally to this case, yet he should be required to file them in form, and if he should then still fail or refuse to do so, there might be a decree for rescission. But, as to the question of rescission on this ground, the aspect of the case

*Margin notes:*

CLARK *et al.*
*vs*
BELL *et al.*
AND
HANDLEY
*vs*
BELL *et al.*

allegation of error in the Court below in calculations of such accounts, enter into a minute and particular calculation, unless its attention is specifically drawn thereto by counsel.

Where compl't. in his original bill for a rescission of a contract of purchase of land, does not complain of defect of title generally, nor call for an exhibition of title, but in an amended bill alleges defect only in a small part of one of several small tracts purchased, if this Court adjudge in favor of vendor as to such disputed part, it will not rescind because the title is not formally exhibited, but give the defendant time to do so.

CLARK *et al.*
*vs*
BELL *et al.*
AND
HANDLEY
*vs*
BELL *et al.*

has been materially changed since the consolidation of the suits, in consequence of the succession of *M. B. Clark* and *White* to the rights of *M. Clark.* These new parties, who alone have since prosecuted the consol-idated suits, have neither expressed any distrust as to *Bell's* general title, nor required a formal exhibition of it; and in fact it seems almost evident that a rescission of the contract, on equitable terms, would be as much against their will as it would certainly be disadvantageous if not ruinous to them; hence we cannot yet say that the Circuit Judge erred to their prejudice or that of their vendor, *M. Clark*, in not decreeing a rescission of the contract on the general ground we have been just consid-ering, and there is no pretence of any other cause for a compulsory rescission.

In such case the Court should re-quire defendant to make a for-mal exhibition of his title, that it may decide whether it is such a title as com-plainant should accept without further assur-ance, especially when defendant appears to be in-solvent and has a wife living, who would be dowa-ble of the lands sold in case of husband's death.

3. In decreeing a sale of the land, the Circuit Court virtually decreed a specific execution of the hitherto un-executed contract of 1814, between *Bell* and *M. Clark.* And though we are clearly of the opinion that the par-ties now seeking a reversal of the decree have no right to complain of the non-rescission of the contract, yet, nevertheless, it does seem to us that the decree, as ren-dered, was rather premature and improvident.

It would have been but reasonable and certainly pru-dent to warn *Bell* to make a formal re-exhibition of his documents of title, unless they were in fact before the Court. And if, as is not improbable, they were consid-ered as virtually filed in or for this case, that fact ought to have appeared in the record. Without seeing the docu-ments of title this Court could not decide with judicial certainty that the title is such as the vendees should be required to accept without any further assurance; and es-pecially as *Bell* seems to be insolvent, and moreover has a wife who may survive him and assert her indubitable right to dower, against which the decree makes no pro-vision, and *Bell's* warranty would afford no adequate se-curity.

Where vendor has not conveyed and seeks to sub-ject land sold to the payment of the considera-

If the documents of title had not been inspected by the Circuit Judge in this case, the production of them ought to have been required. And if, on inspection, the title had been found perfect or secure, as may be strongly

presumed to be its condition, then it would have been proper to make a decretal order warning *Bell* to exhibit in court, on a designated day, a sufficient conveyance, with a proper certificate of his wife's relinquishment, and of the registration thereof in the proper County Court office, and warning also the opposite party to deposit in court, on the same or a succeeding day, the amount due to *Bell;* and upon the filing of such sufficient conveyance, and the failure on the other side to make the required deposit or payment, it would have been perfectly equitable to subject the land to sale, and thus terminate forever this vexatious and almost interminable controversy.

Upon this third and last point only, we are inclined to remand the case for further proceedings.

Decree against Handley affirmed, and decree for selling the land reversed, and cause remanded for such further proceedings and decree only as shall be necessary and proper according to the foregoing opinion, and for the purposes therein indicated.

*Owsley,* for plaintiffs.

tion, it is proper for the Court to require him by a given day, to exhibit in Court a sufficient conveyance, duly acknowledged with proper certificate of relinquishment of dower by the wife, if there be one, which being done, to require vendee to deposit in Court, on a succeeding day, the amount due on the contract, and in case of failure to make such deposit, then to order a sale to satisfy the sum due on the purchase.